# CHRISTINE OLSON v. THE HERTZ CORPORATION AND ANOTHER.

133 N. W. (2d) 519.

January 29, 1965—No. 39,339.

*Robins, Davis & Lyons, John B. McCarthy, Dean K. Johnson,* and *John F. Eisberg,* for appellant.

*King, MacGregor & Lommen* and *Maurice H. Rieke,* for respondent.

FRANK T. GALLAGHER, C.

Appeal from an order of the district court denying the motion of appellant, The Hertz Corporation (hereinafter called Hertz), for amended findings or a new trial.

On January 28, 1961, defendant Merill A. Lindstrom negligently drove an automobile owned by defendant Hertz, injuring plaintiff, Christine Olson, who thereafter brought an action for damages against both Lindstrom and Hertz. Hertz cross-claimed against Lindstrom for indemnity, and Lindstrom answered contending that Hertz' insurer was the real party in interest. Subsequently, Lindstrom and Hertz stipulated with plaintiff for a settlement of her action for $20,000, leaving the question of contribution or indemnity between themselves and their insurers for resolution by the trial court.

Hertz' attorneys, who also represented its insurer, Atlantic National Insurance Company, and Lindstrom's attorneys, who also represented his insurer, Mutual Creamery Insurance Company, stipulated that although the insurance companies were not formal parties to the action, the matter could be heard by the court as if such companies were parties and their respective rights and obligations under their policies could be fully determined.

The following facts were also stipulated:

That Hertz, at the time of the accident, "was engaged in the business of owning automobiles which were rented or furnished for the use of others and used in connection with the operation of its own business."

That Lindstrom was employed by Hertz and was acting within the scope of his employment in driving one of Hertz' automobiles at the time in question.

That the accident which gave rise to this cause of action occurred solely through Lindstrom's negligence and that Hertz was not guilty of any negligence, active or passive.

That the obligations of Hertz to the plaintiff arise only as a result

of its vicarious responsibility under the Financial Responsibility Act, the doctrine of respondeat superior, or both.

The terms of the insurance policies and the fact that they were in force at the time of the accident were also stipulated. The limits of liability for a single bodily injury in the policy issued by Atlantic National Insurance Company (hereinafter called Atlantic) to Hertz were $100,000, while the limits of liability for such an injury in the policy issued by Mutual Creamery Insurance Company (hereinafter called Mutual Creamery) were $25,000.

Hertz states the legal issue raised on this appeal to be whether under the circumstances the two policies of liability insurance provide concurrent coverage in the face of conflicting exculpatory provisions. The trial court held in the negative. Lindstrom and his insurer, Mutual Creamery, submit the following statement of the issues which they claim are raised by the facts here:

"A. Is an automobile liability insurer entitled to indemnification (under the law of subrogation) from its insured?

"The lower court held in the negative.

"B. Are the 'other insurance' clauses of the two insurance policies (involved herein) reconcilable when applied to the facts of this case and construed in the light of the relevant law?

"The lower court held in the affirmative."

The trial court also made the following relevant findings of fact:

"That in the policy issued by Atlantic National Insurance Company, The Hertz Corporation is the named insured, and the vehicle owned by Hertz and driven by Lindstrom at the time of the accident was one of the vehicles insured by said policy. That defendant Lindstrom is also an insured under said policy by virtue of a provision in said policy that 'the unqualified word "insured" includes the named insured and also includes * * * (8) Any employee of the named insured while acting within the scope of his employment.' That said Atlantic policy further provides under the heading 'Other Insurance' the following: 'The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured either as an insured under another policy or otherwise.'

"That the policy issued by Mutual Creamery Insurance Company to Lindstrom is a personal insurance policy insuring Lindstrom and the automobile then owned by Lindstrom and described therein. That in addition thereto, said policy provides insurance for said Lindstrom as to non-owned automobiles but specifically provides: 'The insurance with respect to a temporary substitute automobile, or non-owned automobile, shall be excess insurance over any other valid and collectible insurance.' "

The trial court entered the following conclusions of law:

"That the Atlantic National Insurance Company policy issued to Hertz covers the vehicle involved in this accident, as well as Hertz, the named insured, and Lindstrom, who is included as an insured under the terms of said policy, and said policy of insurance is primary insurance herein.

"That the personal policy issued by Mutual Creamery Insurance Company to Lindstrom, as it applies to the facts in the instant case, is excess insurance.

"That the provision with regard to 'Other Insurance' in the Atlantic National Insurance Company policy is to be given no application since the policy issued to Lindstrom by Mutual Creamery Insurance Company does not constitute other valid and collectible insurance available to the insured within the meaning of the Atlantic National's policy.

"That the recovery by plaintiff herein as stipulated by the parties is within the limits afforded by the Atlantic National Insurance Company, insuring Hertz, so that defendant Hertz and its insurer Atlantic National Insurance Company are responsible for the entire amount thereof to the exclusion of Mutual Creamery Insurance Company."

Although neither of the insurers was a party to the proceedings, the stipulation has the effect of making them parties, and we treat the appeal as raising the question whether the decision of the trial court with respect to the relative obligations of the insurers is in conformity with law.

In our opinion, the determination of the trial court must be affirmed. Considered in its entirety, it is clear from the policy of insurance issued

by Atlantic that it was obtained by Hertz for the principal purpose of protecting it and its employees from liability arising on account of its business operations. The vehicle which was involved in the accident is included within the description contained in the policy. The employees of Hertz are specifically embraced in the definition of insured. The accident here involved gave rise to a liability which the policy specifically covered. We take judicial notice of the fact that the standard premium for such a policy is, by comparison to the premium charged for policies issued with respect to private passenger automobiles, reflective of the greater contemplated exposure.

There is nothing in the terms of the policy or the circumstances under which it is written to suggest that the premium charged was to be in any way different because of the existence of policies of automobile liability insurance secured or to be secured by the employees of Hertz who would be operating the vehicles insured.

On the other hand, the policy of insurance issued by Mutual Creamery, considered in its entirety, appears to have been designed primarily to afford coverage for liability arising out of the ownership, maintenance, or use of the pleasure automobile owned by Lindstrom and operated by him for nonbusiness purposes. The coverage afforded for liability imposed on him when operating a vehicle other than the one described in the policy appears to have been intended primarily to avoid a liability exposure during incidental use of vehicles other than the one described in the policy.

We do not find any prior decision of this court determinative of the question thus raised. Hertz cites Woodrich Const. Co. v. Indemnity Ins. Co. 252 Minn. 86, 89 N. W. (2d) 412, as controlling. We do not consider that decision as determinative of the question raised here. The language in that case, which may seem troublesome on first thought, is the following (252 Minn. 98, 89 N. W. [2d] 420):

"* * * In determining the respective liabilities of insurance coverage in cases of *overlapping coverage,* the decision must rest upon a construction of the language employed by the respective insurers and not upon any so-called primary-tortfeasor doctrine or upon any other arbitrary rule or circumstance. Any language in any of our decisions

subject to a contrary interpretation is expressly overruled." (Italics supplied.)

It must be noted that in that case we were dealing with overlapping insurance. We held there that the various insurance policies involved furnished concurrent coverage of the loss. We also held that the truck involved was not a "nonowned" automobile within the meaning of some of the policies, but was a hired automobile and therefore the insurance covered the risk. In the instant case there is no question that the Hertz automobile was a nonowned automobile so far as the Lindstrom policy (Mutual Creamery) is concerned. There is no overlapping of coverage inasmuch as the Lindstrom insurance does not go into effect until the Hertz insurance (Atlantic) is exhausted. It is our opinion under the facts and circumstances here that the Lindstrom insurance is clearly excess insurance and not concurrent insurance. The conclusion we reached in the Woodrich case in holding that the various policies involved there furnished concurrent insurance was based on facts that are just the opposite of the facts here.

It is contended, however, that the excess clauses in the Atlantic and Mutual Creamery policies cancel each other out and the burden of the loss should be distributed ratably between the two companies. This would be true if it were not for the fact that the policy of insurance issued by Atlantic appears to have been designed specifically to meet the liability exposure here involved, whereas the policy of insurance issued by Mutual Creamery appears to afford coverage as a mere incident of its object, which was to guard against liability arising from the ownership, maintenance, and use of the described pleasure vehicle owned by Lindstrom and used by him generally for a nonbusiness purpose.

It is, therefore, our opinion that the fair disposal of this problem is to require an exhaustion of the Atlantic insurance before resorting to that afforded by the Mutual Creamery policy.

The order of the trial court is affirmed.

Affirmed.