Stuart L. BURNIECE, Respondent,

v.

ILLINOIS FARMERS INSURANCE COMPANY, Appellant.

No. C0-85-2172.

Court of Appeals of Minnesota.

April 15, 1986.

Review Granted June 19, 1986.

Peter W. Riley, Frances S. Li, DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for respondent.

Eric J. Magnuson, Louise A. Dovre, Jeanne H. Unger, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Heard, considered and decided by NIER-ENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Stuart L. Burniece brought suit against his No-Fault carrier and the trial court awarded damages including prejudgment interest and the fifteen percent overdue benefits penalty of the No-Fault Act. Illinois Farmers Insurance Company appeals, claiming it should only have to pay the fifteen percent penalty. We affirm.

## FACTS

As a result of a 1977 automobile accident, respondent Stuart Burniece missed about twenty weeks of work. Appellant Illinois Farmers Insurance, which insured two of respondent's cars, paid him $200 per week in lost wage benefits. Appellant paid only $200 per week despite the fact that it insured two of his cars and that 85 percent of his gross income equaled $346.38, because it believed respondent could not stack the two no-fault coverages.

In 1982, the Minnesota Supreme Court ruled that no-fault policies could be stacked. *See Peterson v. Iowa Mutual*

*Insurance Co.*, 315 N.W.2d 601 (Minn. 1982). Respondent then brought this suit for the money he would obtain by stacking his policies. Appellant refused to pay respondent the extra money because it believed the *Peterson* holding was not retroactive. While the lawsuit was pending, the Minnesota Supreme Court held that *Peterson* was retroactive. *See Streich v. American Family Mutual Insurance Co.*, 358 N.W.2d 396 (Minn.1984).

Shortly thereafter, appellant paid respondent $6,146.50. Of this amount, $2,927.06 constituted the actual amount of wages due and $3,218.90 constituted the 15 percent interest due pursuant to the No-Fault Act because appellant did not pay the claim on time. Respondent brought suit, claiming that he should also be entitled to prejudgment interest. The trial court agreed, and awarded prejudgment interest in the amount of $1,181.59.

## ISSUE

Did the trial court err in awarding prejudgment interest for overdue benefits when a plaintiff already received fifteen percent interest pursuant to the No-Fault Act?

## ANALYSIS

This case involves the interplay between two statutes. The No-Fault Act, Minn. Stat. § 65B.54 (1984), provides in part:

Benefits are overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized * * *.

$$* \quad * \quad * \quad * \quad * \quad *$$

Overdue payments shall bear simple interest at the rate of 15 percent per annum.

The Prejudgment Interest Act, Minn.Stat. § 549.09, subd. 1(b) (1984), provides in part:

Except as otherwise provided by contract or allowed by law, pre-verdict or pre-report interest on pecuniary damages shall be computed * * * from the time of the commencement of the action * * *.

Appellant argues that the trial court erred in awarding prejudgment interest. Appellant focuses on the provision of the prejudgment interest act which states, *"except as otherwise * * * allowed by law, * * * interest on pecuniary damages shall be computed * * *."* Minn.Stat. § 549.09, subd. 1(b) (emphasis added). Appellant argues that the fifteen percent interest from the No-Fault act is interest "otherwise allowed by law." Therefore, appellant argues that prejudgment interest should not be allowed.

We disagree. The purpose of prejudgment interest is to compensate a party for the loss of the use of money. *Thompson v. Gasparro*, 257 N.W.2d 355, 356 (Minn.1977). The purpose of the fifteen percent interest provision of the No-Fault act is to punish insurance companies for their failure to pay proceeds on time and to motivate them to pay on time. In *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648 (Minn. 1979), the plaintiffs contended that an insurance company's refusal to pay claims constituted an independent tort for which they should receive punitive damages and damages for intentional infliction of emotional distress. The supreme court disagreed. However, the court, citing § 65B.54, stated that the no-fault act "does provide a form of remedy for nonpayment of insurance." *Id.* at 653. The court remanded the case to the trial court to impose the statutory "penalty." *Id.* Thus, it is clear that the no-fault provision is not to compensate insured individuals but to punish insurers and provide a remedy in lieu of punitive damages and damages for emotional distress. One year later, in *Pederson v. All Nation Insurance Co.*, 294 N.W.2d 693, 696 (Minn.1980), the court also referred to the provision as a "penalty." *See also Streich v. American Family Mutual Ins. Co.*, 358 N.W.2d 396, 400 (Minn. 1984) ("statutory 15% penalty").

Because of the different purposes of the acts, we hold that the fifteen percent interest from the No-Fault Act is not interest which is otherwise allowed by law, and that an award of prejudgment interest was proper.

## DECISION

The trial court properly awarded respondent both prejudgment interest and the fifteen percent penalty.

Affirmed.

NIERENGARTEN, Judge, dissenting:

I respectfully dissent. The majority holds that the separate purposes of the no-fault interest provision and the prejudgment interest statute allow for imposition of both against a no-fault insurer in a claim made for payment of overdue benefits. Its holding, however, fails to recognize the dual purposes underlying the interest provision in the No-Fault Act, one of which is compensation to the claimant for the loss of use of money during the period when payment is overdue.

In *Record v. Metropolitan Transit Commission*, 284 N.W.2d 542, 545 (Minn.1979), the supreme court cited with approval the comments to the Uniform Motor Vehicle Accident Reparations Act in determining the intent behind Section 65B.54 of the No-Fault Act. The comments indicate that imposition of interest serves not only to encourage prompt payment by the no-fault insurer, but also to compensate the insured for the loss of the use of his money. *See* Uniform Motor Vehicle Accident Reparations Act § 23 comment (1980). It states:

> Subsection (b), subjecting overdue payments to [18] percent interest, is another provision encouraging periodic payment of benefits without delay. The 18 per cent figure is recommended because it is the interest rate which an insured would be required to pay in many transactions involving consumer credit, and it is sufficiently high to induce the reparation obligor to pay promptly. A figure substantially lower, 6 per cent for example, would neither compensate an ordinary consumer for loss of use of the funds nor provide sufficient inducement for prompt payment.

*Id.*

Under Section 549.09 prejudgment interest is not available when compensation is "otherwise provided by contract or allowed by law." Minn.Stat. § 549.09 (1984). Section 65B.54 of the No-Fault Act "otherwise provides" for interest in the present situation. *See id.* § 65B.54, subd. 2.

The compensatory purpose of the No-Fault Act's interest provision is consistent with the compensatory purpose underlying the prejudgment interest statute. Thus, by the prejudgment interest statute's own terms, no further interest is available to the claimant beyond the 15% provided for under the No-Fault Act.