Beryl J. HOFF, Respondent,

v.

Merle S. KEMPTON, Appellant,

Travelers Insurance Company, Garnishee.

No. 81–298.

Supreme Court of Minnesota.

March 26, 1982.

Alex B. Leibel & Assoc. and Robert Drevlow, Minneapolis, for appellant.

Oberg & Mannikko and Joseph Mannikko, Wayzata, for respondent.

## OPINION

SIMONETT, Justice.

This is an appeal from an order denying defendant Kempton's motion to dismiss for lack of jurisdiction pursuant to *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Upon request of defendant, the district court thereafter certified as "important and doubtful" pursuant to Minn.R.Civ.App.P. 103.03(i) the question of whether *Rush v. Savchuk* should be retroactively applied. We answer this question in the affirmative and reverse the order of the district court with instructions to dismiss for lack of jurisdiction.

This action arises out of an automobile accident which occurred on July 21, 1978, in Sioux City, Iowa. Plaintiff, Beryl J. Hoff, a Minnesota resident, commenced this action in Minnesota against defendant driver, Merle S. Kempton, an Iowa resident, by garnishing Kempton's auto insurance policy with Travelers Insurance Company under Minn.Stat. § 571.41, subd. 2 (1978). Hoff served Travelers with a pre-garnishment summons on March 8, 1979, through service on the Minnesota Commissioner of Insurance. Hoff then served the summons and complaint on defendant Kempton on March 27, 1979. It is undisputed that the only Minnesota asset of Kempton's is his Travelers insurance policy and that Kempton was and remains an Iowa resident. Kempton answered the complaint on April 26, 1979, by alleging, *inter alia*, that "the court herein lacks jurisdiction over the subject matter of this litigation and over the person of this answering Defendant."

On July 28, 1980, Kempton moved the court to issue an order dismissing this case for lack of jurisdiction. This motion was made 7 months after the date of the *Rush v. Savchuk* decision and 1 week after the Iowa statute of limitations had run for Hoff to commence an action in that state.

█ In *Rush v. Savchuk*, the United States Supreme Court clearly and unequivocally held that the so-called New York *Seider*[1] attachment-of-insurance-policy method

1. *Seider v. Roth*, 17 N.Y.2d 111, 216 N.E.2d 312, 269 N.Y.S.2d 99 (1966).

of establishing quasi-in-rem jurisdiction was unconstitutional as a denial of the out-of-state defendant's due process rights. Since jurisdiction over Kempton was established in precisely this fashion in the instant case, it is clear that if *Rush* applies, the district court will have to dismiss the action for lack of jurisdiction.[2]

▋ The general rule is that, absent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only, the decision is to be given retroactive effect. *NLRB v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 757 (7th Cir. 1981); *Kremer v. Chemical Construction Corp.*, 623 F.2d 786, 788–89 (2d Cir. 1980); Note, Prospective or Retroactive Operation of Overruling Decision, 10 A.L.R.3d 1371, 1384 (1966). In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court announced a three-factor test to be used in determining whether an exception should be made to this general rule:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for

"[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–07, 92 S.Ct. at 355 (citations omitted.)

1. The first factor is whether the new decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *." *Id.*

Kempton contends that *Rush* does not satisfy the requirements of this factor. He argues that *Rush* is not in fact an "overruling decision" at all because it merely reaffirmed the "minimum contacts" doctrine of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Furthermore, he argues, *Rush* was foreshadowed by the *Shaffer* decision and by the United States Supreme Court's 1978 remand of this court's initial *Savchuk v. Rush* decision, 311 Minn. 480, 245 N.W.2d 624 (1976), *remanded*, 433 U.S. 902, 97 S.Ct. 2964, 53 L.Ed.2d 1086 (1977).[3] Thus, Kempton would have us find that *Rush v. Savchuk* does not satisfy either element of the first factor.

▋ This argument is incorrect because it misperceives the issue: the question is not solely whether Rush overruled or changed federal due process law, but whether that decision changed the rules of law operating in early 1979, at the time Hoff commenced

---

**2.** Hoff suggests the proposition that this action should not be dismissed even if *Rush* applies because of the possibility that Kempton may have "minimum contacts" with Minnesota to satisfy the *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), test. However, Kempton submitted an affidavit stating that he had no contacts whatsoever with Minnesota. Hoff has not submitted any supporting documents showing the presence of sufficient "contacts" by Kempton. It is well settled in Minnesota that where a nonresident defendant challenges jurisdiction, plaintiff has the burden of proving that "mini-

mum contacts" exist. *Sausser v. Republic Mtg. Investors*, 269 N.W.2d 758, 761 (Minn. 1978). "Furthermore, if a motion to dismiss is supported by affidavits, the nonmoving party cannot rely on general statements in his pleading * * *." *Id.* Therefore, if this court determines that *Rush* applies to this case, it must order the district court to dismiss the action.

**3.** There was also much critical commentary of this court's *Rush* decisions and predictions of their demise. *See, e.g.*, 1 McFarland & Keppel, *Minnesota Civil Practice*, § 733 (1979 and Supp. 1982).

her suit. The answer to this question is, quite clearly, in the affirmative. In Minnesota, prior to *Rush v. Savchuk, Seider*-type jurisdiction was the law under Minn.Stat. § 571.41. This court twice reaffirmed that, in its view, the statute was constitutional. Therefore, from the point of view of a plaintiff deciding whether or not to come into Minnesota's courts to exercise a *Seider* garnishment, the effect of *Rush v. Savchuk* was very much to change precedent and establish a new principle of law in Minnesota. *Cf. Holzsager v. Valley Hospital*, 646 F.2d 792 (2d Cir. 1981) (Second Circuit, applying *Chevron* to similar situation in New York state, reaches same conclusion for first factor); *but see Saraceno v. S. C. Johnson & Son, Inc.*, 492 F.Supp. 979 (S.D. N.Y.1980) (finds first factor not satisfied, but question "close enough to warrant careful consideration of the remaining *Huson* factors").

■ 2. The second *Chevron* factor is whether retrospective application of *Rush v. Savchuk* will further or retard operation of that rule. This is, essentially, a purposive inquiry. Hoff asserts that the due process goal of "fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158, will not be served by retroactive application of the *Rush* decision. We fail to understand the logic behind this assertion. *Rush* is designed to protect nonresident defendants from being dragged unfairly into a jurisdiction to which they have no relationship and in which they should not have to defend themselves. Applying *Rush v. Savchuk* retroactively *will* serve that goal. *Accord, Holzsager v. Valley Hospital*, 646 F.2d at 797; *Saraceno v. S. C. Johnson & Son, Inc.*, 492 F.Supp. at 984.[4]

■ The third *Chevron* factor requires a weighing of the equities involved in a retroactive application of *Rush v. Savchuk*. There are obviously strong equities in Hoff's favor: if the Minnesota forum is

closed to her, she will not be able to receive compensation for her injuries because there is no other available jurisdiction. Although Kempton is correct in responding that Hoff still had 7 months in which to file suit in Iowa after *Rush* was announced, Kempton did not file his motion to dismiss until after that time period expired. If the rule is applied prospectively, however, Kempton would only be forced to defend in a sister state a suit which he would have had to defend in his own state, had it been filed in time.

We recognize the harshness to Hoff of finding that *Rush v. Savchuk* is to be applied retroactively. We must note, however, that the United States Supreme Court in *Rush* applied its decision to an even more unyielding factual situation. The only forum available to plaintiff Savchuk was the State of Minnesota because Indiana—the situs of the car accident—has a guest statute which prevents suits by automobile passengers against their drivers. By holding that Minnesota did not have jurisdiction in that case, the decision in *Rush v. Savchuk* effectively denied all relief to Savchuk. The court therein gave no indication that its decision should not be applied retroactively in other cases. Following the lead of the United States Supreme Court in *Rush v. Savchuk*, we find the equities in the instant appeal do not militate against the retroactive application of that decision. *Accord, Holzsager v. Valley Hospital; Saraceno v. S. C. Johnson & Son, Inc.*

■ Finally, we observe that in a recent case involving a question of subject matter jurisdiction, not personal or quasi-in-rem jurisdiction, the United States Supreme Court stated that:

If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over. A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only.

---

4. "There is no doubt that the [United States Supreme C]ourt concluded in *Rush* that *Seider*-type attachments violate 'traditional notions of fair play and substantial justice.' Application

of *Rush* to pending cases would 'surely further rather than retard the operation of ... [this] principle designed to' limit the exercise of state judicial power to constitutional bounds."

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). *See also Holzsager v. Valley Hospital*, 646 F.2d at 798 (Meskill, J., concurring) (*Firestone* statement "controlling" on issue of *Rush* retroactivity).[5]

■ We hold that the rule of *Rush v. Savchuk* is to be applied retroactively to all cases pending in the State of Minnesota as of the date of the decision in *Rush* and in which *Seider* attachments served as the sole basis of establishing jurisdiction over the defendant. Therefore, the instant appeal is reversed and remanded with instructions to the district court to dismiss for want of jurisdiction.

3. This appeal gives us an opportunity to discuss briefly our summary affirmance procedure. About a year ago, we issued a summary affirmance order in *McNamara v. Quiroz*, Case No. 51489, dated February 27, 1981, which affirmed an order of the Hennepin County District Court applying *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), retroactively. Now, in this appeal we issue an opinion holding *Rush* applies retroactively.

■ On December 17, 1981, we amended Minn.R.Civ.App.P. 133.01(1) to add "[s]ummary dispositions have no precedential value and shall not be cited." This amendment simply sets out our prior practice in assigning no precedential significance to summary affirmances.

Because of the volume of appeals, not every case deserving an opinion can be giv-

---

**5.** Respondent Hoff cited three New York trial court decisions in support of her position that *Rush* should not be applied · retroactively. Since the filing date of respondent's brief, however, the New York Court of Appeals has consolidated all such cases and rendered an opinion defining that state's approach to the same question which is before this court in the instant appeal. *Gager v. White*, 53 N.Y.2d 475, 425 N.E.2d 851, 442 N.Y.S.2d 463 (1981).·· In *Gager*, the court held that:

Rush must be applied only when a specific objection to the assertion of jurisdiction founded on the attachment of the out-of-State defendant's liability insurance policy was preserved by appropriate motion or affirmative defense.

*Id.*, 53 N.Y.2d at 478, 425 N.E.2d at 853, 442 N.Y.S.2d at 465. As illustrated by its application of this rule to the consolidated cases, the New York court will permit retroactive application of *Rush v. Savchuk* only in the very narrow set of cases in which defendant specifically raised the precise objection to the quasi-in-rem basis of establishing jurisdiction over the defendant. Without that precise objection, under *Gager* defendant will be deemed to have "waived" this ground and voluntarily submitted himself to the court's jurisdiction. An objection to "jurisdiction over the person" will not be deemed to be "sufficiently particularized," because personal jurisdiction is a "categorically distinct concept" from quasi-in-rem jurisdiction.

Since New York was the only other pure *Seider* jurisdiction prior to the *Rush* decision,· we treat the approach of that state's highest court with great respect. We are unable to embrace the New York court's decision totally, however, because of that court's understandable reluctance to implement fully the mandate of *Rush*. Initially, we note that the New York court has adopted an overly technical waiver rule based upon an assumed significant dissimilarity between quasi-in-rem and personal forms of jurisdiction. It is our understanding that both forms, along with in-rem jurisdiction, are commonly grouped and taught under the rubric of "personal jurisdiction." The rules of civil procedure adopted in most jurisdictions, including Minnesota, reflect this common understanding. Rule 12.08 refers only to "jurisdiction over the person," yet there is no doubt that this phrase includes both in-rem and quasi-in-rem jurisdiction as well. To object to personal jurisdiction, or jurisdiction over the person at the very least, we believe, ought to be sufficient to avoid the waiver trap of *Gager*.

More importantly, we note that the *Gager* waiver rule depends upon a finding that plaintiff's reliance upon the then-existing law allowing *Seider* attachments is permissible while defendant's similar reliance upon the same law is not. *Gager* requires defendants to be sufficiently prescient to have foreseen both the *Rush v. Savchuk* decision and the *Gager* interpretation and to have acted accordingly by specifically raising an objection to the quasi-in-rem jurisdiction, even though *Seider* jurisdiction had repeatedly been upheld in New York prior to *Rush*. Under the *Gager* decision, a general objection to a court's lack of jurisdiction over the person raised prior to Rush, followed by a post-answer motion objecting to the *Seider* jurisdiction based upon the *Rush* decision, will be deemed to result in a "waiver" by defendant of his right to object to that jurisdictional basis. To permit plaintiff to rely on *Seider* to bring the suit while penalizing defendant for relying on the same law seems to us to be both unfair and improper. We therefore respectfully decline to adopt the New York waiver approach in Minnesota.

en a written opinion; in the nature of things, a selective process is at work. In *McNamara*, it did not seem to us that an opinion was needed on this somewhat limited, though important, issue of *Rush II's* retroactivity. In this appeal, however, the issue returns (even with essentially the same briefs used in *McNamara*) and with a recent New York decision addressing the issue. Because on re-examination we conclude again that *Rush II* applies retroactively, we must reverse the lower court's ruling holding otherwise. In this posture, we believe the parties and the trial court are entitled to know our reasoning. We think, too, it is time to put the issue to rest, and, therefore, a written opinion issues.

■ Summary affirmances have no precedential value because they do not commit the court to any particular point of view. They do no more than establish the law of the case.

■ In many instances only a sufficiency-of-the-evidence question is involved, or an application of well-settled law—of importance to the parties but of no precedential value—and this kind of appeal may well lend itself to summary affirmance. In other instances, some or all of the members of this court may feel that the result below was proper but for the wrong reasons or for different reasons than those assigned below. In some cases, some or all members of the court may feel an appeal raises a troublesome legal issue of general interest but that the record on appeal is too confusing or inadequate to present the issue for a considered written opinion, and we choose to wait for another appeal. In such cases, if the result is nevertheless proper, summary affirmance may be used. In any event, summary disposition should not be construed to mean the case has not been carefully considered. Thus, it would be more accurate, perhaps, to refer to a "summary affirmance" as an "affirmance without opinion."

Reversed and remanded.

KELLEY, J., took no part in the consideration or decision of this case.